## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

## EASTERN DIVISION

UNITED STATES OF AMERICA AND

EX. RELATOR ABDUL MOHAMMED,

vs.

ISLAMIC CIRCLE OF NORTH AMERICA, ICNA RELIEF USA AND/OR THEIR PARENT, SUBSIDIARIES AND AFFILIATES (COLLECTIVELY "ICNA"), MALIKA RUSHDAN, AND SAIMA AZFAR, INDIVIDUALLY AND AS AGENTS, SERVANTS, EMPLOYEES, VOLUNTEERS OF "ICNA", PAST AND PRESENT BOARD MEMBERS OF "ICNA",

HAMDARD CENTER FOR HEALTH AND HUMAN SERVICES, AND/OR THEIR PARENT, SUBSIDIARIES AND AFFILIATES (COLLECTIVELY "HAMDARD"), MOHAMMAD HAMID, KIRAN SIDDIQUI, MARYAM MIRZA, HAMDIA RAZVI, IMRAN MIRZA, FARHANA SIDDIQ, QAMAR RAZVI, RUBY KHAN, Mrs. RASHEED, INDIVIDUALLY AND AS AGENTS, SERVANTS, EMPLOYEES, FORMER EMPLOYEES, VOLUNTEERS OF "HAMDARD", PAST AND PRESENT BOARD MEMBERS OF "HAMDARD",

**FARHEEN FATHIMA** INDIVIDUALLY,

APNA GHAR INC, AND/OR THEIR PARENT, SUBSIDIARIES AND AFFILIATES (COLLECTIVELY "APNA GHAR"), NEHA GILL, INDIVIDUALLY AND AS AGENT, SERVANT, EMPLOYEE, VOLUNTEER OF "APNA GHAR", PAST AND PRESENT BOARD MEMBERS OF "APNA GHAR",

SIDDIQUE LAW GROUP LLC, AND/OR THEIR PARENT, SUBSIDIARIES AND AFFILIATES (COLLECTIVELY "SIDDIQUE"), SAAMIA SIDDIQUE AND HASHIM SIDDIQUE INDIVIDUALLY AND AS AGENTS, SERVANTS, EMPLOYEES, VOLUNTEERS OF "SIDDIQUE" AND BOARD MEMBERS OF "SIDDIQUE",

PRAIRIE STATE LEGAL SERVICES INC, AND/OR THEIR PARENT, SUBSIDIARIES AND AFFILIATES (COLLECTIVELY "PRAIRIE STATE"), KERRY O'BRIEN INDIVIDUALLY AND AS AGENT, SERVANT, EMPLOYEE, VOLUNTEER OF "PRAIRIE STATE" AND PAST AND PRESENT BOARD MEMBERS OF "PRAIRIE STATE",

GOVERNMENT OF ISLAMIC REPUBLIC OF PAKISTAN AND EMBASSY OF ISLAMIC REPUBLIC OF PAKISTAN TO UNITED STATES IN WASHINGTON DC (COLLECTIVELY PAKISTAN),

GOVERNMENT OF PEOPLE'S REPUBLIC OF BANGLADESH AND EMBASSY OF PEOPLE'S REPUBLIC OF BANGLADESH TO UNITED STATES IN WASHINGTON DC (COLLECTIVELY BANGLADESH)

JOHN AND JANE DOE DEFENDANTS OF "ICNA", "HAMDARD", "APNA GHAR", 'SIDDIQUE", "PAKISTAN", "BANGLADESH AND "PRAIRIE STATE" 1-2000000,

DEFENDANTS

RECEIVED

JUL 31 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

COMPLAINT WITH JURY DEMAND

17-cv-05585
Judge Rebecca R. Pallmeyer
Magistrate Judge Jeffrey Cole

1

## COMPLAINT FILED UNDER SEAL
## FALSE CLAIMS ACT COMPLAINT

### Nature of Action

1.　This is a civil action to recover damages knowingly caused by the defendants, through its systemic Visa Fraud, Immigrations Benefits Fraud and abuse of immigration processes.

### Jurisdiction and Venue

2.　The Court has jurisdiction and venue over this action pursuant to 31 U.S.C. '3732 and 28 U.S.C. § 1345, because this action is being brought by the United States of America and acts underlying this complaint occurred in the jurisdiction of this Court.

### Parties

3.　The United States of America and the Relator, Abdul Mohammed are the Plaintiffs.

4.　The Relator is a resident of the State of Illinois.

5.　The defendants Islamic Circle of North America and ICNA Relief USA are both Not for Profit Corporations, authorized to conduct operations and conducting operations in the district of this court's jurisdiction, with its principal places of business located at 166-26, 89th Ave, Queens, NY 12032 and 87-91 144th St, Jamaica, NY 12035 respectively.

6.　The Defendant Hamdard Center for Health and Human Services and is a Not for Profit Corporation, authorized to conduct operations and conducting operations in the district of this court's jurisdiction, with its principal places of business located at 228 East Lake St, Adison, IL 60120 and 1552 West Devon Ave, Chicago, IL 60660

7.　The defendants Islamic Circle of North America and ICNA Relief USA has their Midwest Regional office in Illinois located at 1S270 Summit Ave, Oakbrook Terrace, IL 60181.

8.　Apna Ghar Inc. Not for Profit Corporations, authorized to conduct operations and conducting operations in the district of this court's jurisdiction, with its principal places of business located at 4350 North Broadway, Chicago, IL 60613.

9.　Prairie State Legal Services Inc. is a Legal Aid Service Provider authorized to conduct operations and conducting operations in the district of this court's jurisdiction, with its principal places of business located at 400 Roosevelt Rd, Wheaton, IL 60187.

10. Siddique Law Group LLC is a Law Firm authorized to conduct operations and conducting operations in the district of this court's jurisdiction, with its principal places of business located at 30 West Monroe, Suite 1075 Chicago, IL 60603 and 312 South Main Street Unit 2, Goshen, IN 46527.

11. Government of Islamic Republic of Pakistan is a Foreign Government authorized to conduct operations and conducting operations in the district of this court's jurisdiction, with its principal place of operations located in the premises of the Consulate General of Pakistan, 333 North Michigan Avenue, Suite 728, Chicago, IL 60601 and in the premises of Embassy of Pakistan, 3517 International Court NW, Washington, DC 20008.

12. Government of Peoples Republic of Bangladesh is a Foreign Government authorized to conduct operations and conducting operations in the district of this court's jurisdiction, with its principal place of operations located in the premises of the Embassy of Bangladesh, 3510 International Drive NW, Washington, DC 20008 and in the Premises on Consulate General of Bangladesh, 3418 Northern Blvd, Ground Floor, Long Island City, NY 11101.

13. The defendant Malika Rushdan is a resident of the State of New York.

14. The defendants **Fathima Fathima**, Mohammad Hamid, Kiran Siddiqui, Maryam Mirza, Hamdia Razvi**,** Imran Mirza, Farhana Siddiq, Qamar Razvi, Ruby Khan, Mrs. Rasheed, Saamia Siddique, Hashim Siddique, Kerry O' Brien, Neha Gill, Saima Azfar are residents of the State of Illinois.

15. The addresses of the John and Jane Doe defendants are unknown.

## Factual Background

16. Relator Mohammed's wife Defendant Fathima was arrested on two counts of domestic battery on April 3, 2016.

17. Defendant Fathima was bonded out from the jail by Hamdard Center for Health and Human Services and Islamic Circle of North America on April 23, 2016.

18. Since April 23, 2016, Defendant Fathima has lived in the Domestic Violence Shelter of Hamdard Center by falsely claiming that she was a victim of Domestic Violence.

19. Relator Mohammed got an Emergency Order of Protection on April 4, 2016 against Defendant Fathima.

20. On April 14, 2016, the Relator Mohammed attended Court hearing in relation to Defendant Fathima's criminal charges.

21. All through the hearing, Defendant Fathima was apologizing to Relator Mohammed for her crimes and pleading with him to bond her out of the jail.

22. On April 22, 2016, Relator Mohammed again attended a Court hearing for Permanent Order of Protection. All through this hearing also, Defendant Fathima was apologizing to Relator Mohammed for her crimes and pleading with him to bond her out of the jail.

23. On April 23, 2016, Defendant Fathima was bonded out of jail by the Hamdard Center and ICNA.

24. On May 4, 2016, Hamdard Center contacted Relator Mohammed through Islamic Center of Naperville, in order to influence him to drop the charges against Defendant Fathima and not to seek the Permanent Order of Protection.

25. Between May 5, 2016 and May 10, 2016, the Hamdard and ICNA Defendants coached Defendant Fathima to lie in Court and to testify that she battered Relator Mohammed in Self Defense.

26. Until she was in jail, Defendant Fathima was apologizing to the Relator for her crimes and pleading with Relator Mohammed to bond her out of the jail.

27. As soon as Defendant Fathima was bonded out by the Hamdard Center and ICNA and went to live in the shelter run by Hamdard Center, she changed her tone and filed a Motion for Self Defense through the Public Defender on May 10, 2016.

28. Hamdard and ICNA Defendants by coaching Defendant Fathima to lie in court has committed Witness Tampering and Obstruction of Justice.

29. Not only Hamdard and ICNA Defendants coached Defendant Fathima to commit perjury but they also gave this criminal case the color of, **State of Illinois v A Muslim woman.**

30. **In both the Mosques in Naperville, Hamdard Center and ICNA presented this case as State of Illinois v A Muslim woman in order to whip up religious tensions.**

31. **As a matter of fact, in both the Mosques in Naperville, the Hamdard Center and ICNA presented this case as United States of America v A Muslim Woman in order to whip up religious tensions.**

32. Hamdard Center and ICNA shamed Relator Mohammed in his place of worship for pursuing criminal charges against Defendant Fathima.

33. Hamdard Center and ICNA admonished Relator Mohammed and told him that he has handed Defendant Fathima to the 'Infidels'.

34. Hamdard Center and ICNA considers any human being who is not a Muslim is an Infidel.

35. Hamdard Center and ICNA inflicted immense mental anguish and emotional distress by bringing Relator Mohammed's personal life in open forum in the mosques just on the belief that Defendant Fathima is innocent and he is guilty in the ongoing criminal case.

36. Hamdard Center and ICNA's egregious behavior has caused immense and irreparable damage to Relator Mohammed's reputation in his community.

37. Hamdard Center and ICNA knew, anticipated, foresaw, and intended that their behavior will damage Relator Mohammed's reputation in his community.

38. Hamdard Center and ICNA intentionally retaliated against Relator Mohammed in a reckless and wanton manor and intentionally inflicted physical and mental injury.

39. Defendant Fathima is out of status now since her Immigration Status was based on being Relator Mohammed's spouse.

40. Relator Mohammed filed for divorce on June 2, 2016.

41. Relator Mohammed's Divorce is still pending in DuPage County.

42. Defendant Fathima wanted to come back home after the expiration of the Order or Protection but Hamdard Center and ICNA did not let her go.

43. At that time, Relator Mohammed was suing Hamdard Center and Islamic Circle of North America for the crimes they committed against Relator Mohammed.

44. Some of the individual defendants named in Relator Mohammed's Federal Lawsuit went to talk to Defendant Fathima at the shelter and told her that she cannot leave the shelter and cannot go back home until Relator Mohammed withdraws the Federal Lawsuit.

45. Defendant Fathima was very desperate to see the children, she called Relator Mohammed and told him that Hamdard Center is not letting her go and she told him that Defendants Hamdia Razvi, Maryam Mirza, Kiran Siddiqui, Saima Azfar and Mohammad Hamid told her she cannot go home until Relator Mohammed withdraws the Federal Lawsuit.

46. Defendants Hamdia Razvi, Maryam Mirza, Kiran Siddiqui, Saima Azfar and Mohammed Hamid snatched Defendant Fathima's Passport, Immigration Documents, SSN Card, State ID, children's passports and other documents and they destroyed all her documents and forced her to file a Petition for Order of Protection against Relator Mohammed that he is harassing her by holding her documents.

47. On May 20, 2016, Defendant Fathima had removed all her documents in presence of Law Enforcement. When Police Officer asked Defendant Fathima, whether she has picked up her property and all her documents, she told the Police Officer that she has picked up all her documents but her passport was missing.

48. Relator Mohammed found the Passport after couple of days and returned that to DuPage Bar Legal Aid and the passport was returned to Defendant Fathima via her attorney.

49. Defendant Fathima picked up her Passport from DuPage Bar Legal Aid's Office.

50. The Police report of Property Transfer says that Defendant Fathima told the Police Officer that she has picked up all documents except her Passport.

51. The Petition for Order of Protection against Relator Mohammed was dismissed.

52. On May 20, 2016 during the transfer of property, Defendant Hamdia Razvi barged into Relator Mohammed's home forcefully in presence of the law enforcement against his wishes under the ruse of providing interpretation to Defendant Fathima when there was no need of interpretation at all as she was talking to the police officers in English. Not only Defendant Hamdia Razvi barged into Relator Mohammed's home against his wishes, she also discussed the details of the criminal case with the police officers. She told the police officer that she has not seen a dude like Relator Mohammed. The Court order said that only Defendant Fathima can enter Relator Mohammed's home in presence of the police officers. Defendant Hamdia Razvi entered Relator Mohammed's home only to see the layout of his house to abduct his children. She is harassing Relator Mohammed to no end. During the property transfer, Defendant Fathima accused Relator Mohammed of stealing her $1,200.00. She was lying. She did not have a single dollar on her. Defendant Fathima said this in court that she does not have even a single dollar and she cannot post the bond. For 21 days, she was rotting in jail when her bond was only $200.00 which was set the day after her arrest. She told three different judges in four different court hearings over a period of 21 days, that she does not have a single dollar. If she had $1,200.00, why she was rotting in jail for 21 days. Her Motion to reduce bail was also denied by the Court. She is just causing Relator Mohammed immense emotional distress and harassment. Officer Maulding from the Naperville Police Department is witness to this harassment meted out to Relator Mohammed by Defendant Fathima and Defendant Hamdia Razvi.

53. Relator Mohammed received a call from New York on 05/25/2016 at 8:46 AM. The person on the phone threatened Relator Mohammed on behalf of, Defendants Fathima, Maryam Mirza (Director of Domestic Violence Shelter), Kiran Siddiqui, Hamdia Razvi (Case Worker for Relator's Wife), Hamdard Center for Health and Human Services and ICNA. He said that if Relator Mohammed testifies in court, Hamdard Center and Islamic Circle of North America will take care of Relator Mohammed here and his parents in India. The person also told Relator Mohammed that he put his wife in jail and by doing so, he put a Muslim woman in the hands of infidels and his wife and Defendant Hamdia Razvi wants him to punish Relator Mohammed. Relator Mohammed reported this to Naperville Police. The report # is 2016-005680. No one other than Hamdard Center, ICNA and Defendant Fathima knows that Relator Mohammed's parents live in India.

54. When Judge Russo ordered supervised visitation for Relator Mohammed's wife with his children at Dupage Family Center, Defendant Hamdia Razvi was insisting on changing the venue of the supervised visitation to Hamdard Center to radicalize his children with radical Islam and turn them into religious fanatics.

55. Relator Mohammed also heard in the hallway after the hearing for Plenary Order of Protection, Defendant Fathima and Defendant Hamdia Razvi were talking to the interpreter and she was telling him and Defendant Fathima that they should have implicated him into 4-5 false charges as the Judge is sympathetic towards Defendant Fathima. The interpreter replied that you should have done this before and it's now too late.

56. The Court appointed interpreter gave all false interpretation and he came to court in Hamdard Center's Car along with Defendant Fathima and Defendant Hamdia Razvi.

57. Relator Mohammed did nothing wrong to these people. Hamdard Center and ICNA threatened Relator Mohammed that he will face dire consequences if he testifies against Defendant Fathima in the criminal case or if he seeks a permanent Order of Protection or if he seeks custody of his children. Between May 5, 2016 and the present date, they have sent numerous individuals to threaten Relator Mohammed.

58. Hamdard and ICNA Defendants took Relator Mohammed's parent's address in India forcefully from Defendant Fathima.

59. Hamdard and ICNA Defendants threatened Relator Mohammed that they have his parents address in India and they will take care of his parents in India.

60. Relator Mohammed tried to reason with Hamdard Center and ICNA that even though he is not a US Citizen, he his loyal to United States.

61. Relator Mohammed told the agents who came to threaten him on behalf of Hamdard Center and ICNA that he owes whatever he has to United States and United States does not owe him anything.

62. Relator Mohammed also told the agents who came to threaten him on behalf of Hamdard Center and ICNA that when he came to this country 13 years back, people of this country embraced him as one of their own and he never felt he was an alien and he never felt that he is not from here.

63. Relator Mohammed explained to the agents who came to threaten him on behalf of Hamdard Center and ICNA that as per Shariah, loyalty to the land where you live is your foremost duty regardless of whether you can practice your religion in that land or not.

64. Regardless of all Relator Mohammed's reasoning the agents who came to threaten him on behalf of Hamdard Center and ICNA told him that he is standing with the 'Kafirs'.

65. For Hamdard Center and ICNA every Non-Muslim is a 'Kafir' (Infidel).

66. Hamdard Center and ICNA don't even know that people who has a holy book are not 'Kafirs'.

67. As per Islam, Christians and Jews are not Kafirs because they follow their Holy Books which are the Holy Bible and the Torah.

68. These radicals at Hamdard and ICNA are practicing a religion which is not Islam.

69. Actual Islam does not incite violence against any other human beings.

70. No one has the first copy of the Quran.

71. The Quran has been altered many times in past 1400 years as per the convenience of the different eras.

72. Relator Mohammed has reported some of the issues mentioned in this Complaint to FBI in June 2016.

73. FBI does not know about the issues and conduct which happened after June 2016.

74. During his meeting with FBI, Relator Mohammed had told the Special Agent that he would like to hold his civil lawsuit until the conclusion of the FBI investigation. The Special Agent informed Relator Mohammed that he should not wait as FBI will not reveal any information during the investigation.

75. On July 21, 2016, Relator Mohammed went to Walgreens for 15 minutes and when he came back his children were missing.

76. At that time Defendant Fathima could not drive as she did not had a Driver's License.

77. Defendant Hamdia Razvi kidnapped Relator Mohammed's children in her car and concealed them for next 34 hours.

78. Relator Mohammed went to court next day and filed Order of Protection and got his children back.

79. Upon returning home Relator Mohammed's children described how they were kidnapped within five minutes by Defendant Fathima and Defendant Hamdia Razvi.

80. Defendant Hamdia Razvi told Defendant Fathima to snatch the phone from Relator Mohammed's daughter and switch it off while they were being driven at high speeds in the car to an unknown destination by Defendant Hamdia Razvi.

81. Defendant Hamdia Razvi also asked Defendant Fathima which way Relator Mohammed usually comes home. Upon information about Relator Mohammed usual route to his home, Defendant Hamdia Razvi turned around and took a different route.

82. When Relator Mohammed went to pick up his children at Addison Police Department, his daughter gave his phone and told him that it was snatched by Defendant Fathima and switched off.

83. After Relator Mohammed filed for divorce, Defendant Fathima called him and told him that she is very sorry that she lied in court in her criminal case and she begged him that she does not want to leave him.

84. Defendant Fathima told Relator Mohammed that Defendant Hamdia Razvi, Maryam Mirza, Kiran Siddiqui, Saima Azfar and Mohammad Hamid forced her to lie in court in her criminal case.

85. Defendant Fathima wanted to go to State Attorney's Office in DuPage County and tell the truth that she lied in the criminal case under pressure from Defendant Hamdia Razvi, Maryam Mirza, Kiran Siddiqui, Saima Azfar and Mohammad Hamid. But they are not letting her tell the truth to the State's Attorney. Defendants Hamdia Razvi, Maryam Mirza, Kiran Siddiqui, Saima Azfar and Mohammad Hamid has told Defendant Fathima that if she tells the truth to the State Attorney now, she will be thrown back into jail and she will not be able to see the children.

86. Hamdard Center and ICNA forced Defendant Fathima to lie to the Police that Relator Mohammed knocked her five front teeth out.

87. Defendant Fathima's front teeth were removed by her dentist for severe periodontitis and bone loss. Relator Mohammed has her dental records.

88. Relator Mohammed went to Defendant Fathima's dentist and told him that he is being accused of knocking her front teeth out.

89. The dentist told Relator Mohammed if needed, he will come and testify in court.

90. Defendant Fathima later called Relator Mohammed and told him that Defendants Hamdia Razvi, Maryam Mirza, Kiran Siddiqui, Saima Azfar and Mohammad Hamid came to the shelter and told her what to tell in the Police Interview. They also threatened her that if she did not tell the Police that Relator Mohammed knocked her front teeth out, they will take care of her father and brother in India.

91. Defendant Hamdia Razvi, Maryam Mirza, Kiran Siddiqui, Saima Azfar and Mohammad Hamid by force obtained Defendant Fathima's father's phone number and address in India.

92. Defendant Fathima told Relator Mohammed that she is very sorry for what she did and she begged him not to disclose her dental records to anyone.

93. Defendants Hamdia Razvi, Maryam Mirza, Kiran Siddiqui, Saima Azfar and Mohammad Hamid came to know that Defendant Fathima has been giving to Relator Mohammed, the information about what is happening with her in the shelter.

94. Hamdard and ICNA has now even stopped Defendant Fathima from talking to Relator Mohammed. Since August 22, 2016, Relator Mohammed has not spoken to Defendant Fathima over the phone. They even forced Defendant Fathima to file a Motion that Relator Mohammed is harassing her on the phone and that she does not want to talk to him on the phone.

95. Hamdard and ICNA also forced Defendant Fathima to tell them the details about how Relator Mohammed helped U S Government.

96.     Defendant Fathima told Defendant Hamdia Razvi, Maryam Mirza, Kiran Siddiqui, Saima Azfar and Mohammad Hamid that she does not know the details of how the Relator Mohammed helped United States Government.

**<ins>Criminal Conspiracy against Relator Mohammed in order to Qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse.</ins>**

97.     Since April 23, 2016, Hamdard Defendants and Defendant Kerry O'Brien has filed or caused to be filed against Relator Mohammed, the following False Court Pleadings, False Police Reports, False DCFS Reports and a False Report to DuPage County Child Advocacy Center, in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse.

a)      False Petition for Order of Protection against Relator Mohammed on 08/25/16 (Dismissed by the Court).

b)      False Motion for Indirect Civil Contempt against Relator Mohammed on 08/26/16 (Dismissed by the Court).

c)      False DCFS Report on 09/22/2016 for Sexually Abusing Defendant Fathima and physical abuse of Relator Mohammed's children (Dismissed by the DCFS as a Bad Faith Report).

d)      False DCFS Report on 10/07/2016 for Sexually Abusing Defendant Fathima and physical abuse of Relator Mohammed's children (Dismissed by the DCFS as a Bad Faith Report).

e)      False Police Report of Sexual Assault on Relator Mohammed's children on 02/19/17 to Addison Police Department (Dismissed by the Police).

f)      False Police Report of Sexual Assault on Relator Mohammed's children on 02/19/17 to Naperville Police Department (Dismissed by the Police).

g)      False Report of Sexual Assault on Relator Mohammed's children on 02/19/17 to DuPage County Child Advocacy Center (Dismissed by the State Attorney's Office).

h)      False Report of Sexual Assault on Relator Mohammed's children on 02/19/17 to DCFS (Dismissed by the DCFS).

i)      False Petition for Supervised Visitation for Sexual Assault on Relator Mohammed's on 03/29/17 (Dismissed by the Court).

j)   Numerous Reports to Guardian Ad Litem for Sexual Assault on Relator Mohammed's children. (All dismissed by the Guardian Ad Litem)

98.   On October 7, 2016, Defendants Kerry O'Brien, Maryam Mirza, Hamdia Razvi, Kiran Siddiqui, Mohammad Hamid and School Counsellor at Madison Junior High conspired and worked in concert and transmitted a False DCFS Report for Physical Abuse of Relator Mohammed's children and for rape of Defendant Defendant Fathima against Relator Mohammed. The DCFS Report against the Relator was dismissed as a "Bad Faith Report" by the DCFS. This False DCFS Report was transmitted against Relator Mohammed in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse.

99.   On October 7, 2016, there was a court hearing on my Petition for Order of Protection against Defendant Defendant Fathima and another Petition for Order of Protection from Defendant Defendant Fathima against Relator Mohammed. The Petition for Order of Protection from Defendant Fathima against Relator Mohammed was filed in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse. The Petition for Order of Protection against Relator Mohammed was dismissed by the court on November 18, 2016.

100.   Within 3 hours and 29 minutes after the Agreement to Dismiss Defendant Fathima's Petition for Order of Protection against Relator Mohammed, a False DCFS Reported was transmitted by Hamdard Center.

101.   Around last week of December 2016, Defendant Fathima's case worker Hamdard Center and ICNA sent someone to threaten Relator Mohammed in the Mosque. Relator Mohammed later came to know that his name is Imran Mirza.

102.   Imran Mirza threatened Relator Mohammed that if he did not relinquish the custody of his children to Defendant Fathima, Hamdard Center will report him to the DCFS that Relator Mohammed is sexually abusing his children.

103.   Immediately after Imran Mirza had threatened Relator Mohammed that Hamdard Center will report to the DCFS that he is sexually abusing his children, he informed that to his attorneys via email.

104.   On February 19, 2017, Hamdard Center reported to the DCFS that Relator Mohammed is sexually abusing his children. This DCFS Report was transmitted against Relator Mohammed in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse. The DCFS Report against Relator Mohammed was dismissed by DCFS as unfounded as children did not disclose any sexual abuse to the DCFS.

105.   Defendant Kerry O' Brien is Defendant Fathima's Attorney in the Divorce Proceedings.

106. Defendant Kerry O' Brien is the Attorney assigned to DuPage County Homeless Project.

107. Defendant Kerry O'Brien filed his appearance to represent Defendant Fathima in her divorce proceedings pending in DuPage County on July 15, 2016.

108. Since filing his appearance for Defendant Fathima in her divorce proceedings, Defendant Kerry O'Brien has harassed Relator Mohammed to no end by filing False Pleadings against Relator Mohammed in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse.

109. Since filing his appearance for Defendant Fathima, Defendant Kerry O'Brien has harassed Relator Mohammed in number of ways.

110. Between July 15, 2016 and the present date, Defendant Kerry O'Brien filed False Declarations in court and testified in court that Relator Mohammed is holding Defendant Fathima's State ID, Passport, SSN Card and her Immigration Documents and that he was refusing to return it to her, in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse.

111. Defendant Fathima used her State ID when she applied for Legal Aid with Prairie State on or about July 13, 2016.

112. On or before August 10, 2016, Defendant Kerry O'Brien informed Relator Mohammed's Attorney, Melissa Kuffel, that he has obtained Credit Report of Defendant Fathima.

113. Defendant Kerry O'Brien was demanding the return of his client's State ID, Passport, SSN Card and her Immigration Documents and falsely accused Relator Mohammed of holding his client's State ID, Passport, SSN Card and her Immigration Documents and at the same time he personally used the same State ID or Passport to obtain his client's Credit Report.

114. Without a State ID or a valid Passport no one can obtain a Credit Report.

115. Relator Mohammed confirmed with all three Credit Bureaus which are Experian, Equifax and Transunion that a State ID or a valid Passport is a must to obtain a Credit Report.

116. All along Relator Mohammed has maintained his stand that Defendant Fathima removed all her documents including her State ID, Passport, SSN Card and her Immigration Documents during the Property Transfer on May 20, 2016, in presence of Naperville Police. During the Property Transfer. Relator Mohammed was not allowed by the Police Officers to enter his bedrooms and he was asked to stay at the entrance of his apartment.

117. The Property Transfer Report from Naperville Police Department says that the Defendant Fathima informed the Police Officer that she has all her documents except her Passport.

118. Relator Mohammed was able to locate Defendant Fathima's Passport few days later and it was returned to her via DuPage Bar Legal Aid.

119. On August 25, 2016, Defendant Kerry O'Brien again filed a False Pleading in the form of a Petition for Order of Protection against Relator Mohammed., in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse. The Petition for the Order of Protection against Relator Mohammed was dismissed by the Court.

120. On August 26, 2016, Defendant Kerry O'Brien again filed a False Pleading in the form of a Motion for Indirect Civil Contempt against Relator Mohammed. The Motion for Indirect Civil Contempt against Relator Mohammed was dismissed by the court.

121. On March 29, 2017, Defendant Kerry O'Brien again filed a False Pleading for Supervised Visitation accusing Relator Mohammed of sexually abusing the children, in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse.

122. Defendant Kerry O'Brien, knew that all the allegations against Relator Mohammed has been investigated and determined to be unfounded and false by the Addison PD, Naperville PD, DCFS, DuPage County Child Advocacy Centre and the Guardian Ad Litem.

123. In the Motion for Supervised Visitation, Defendant Kerry O'Brien also falsely accused that Relator Mohammed was driving on a Suspended Driver's License, in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse.

124. Relator Mohammed's Licence was never suspended and he never drove on a suspended Driver's License.

125. Relator Mohammed provided documented evidence to the Court from the Secretary of State that his Driver's License was not suspended.

126. In the Motion for Supervised Visitation Defendant Kerry O'Brien falsely accused that Relator Mohammed was getting evicted and he was behind on his rent, in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse.

127. Relator Mohammed was current on his rent and he provided documented evidence from his landlord that he is current on his rent.

128. Defendant Kerry O'Brien egregious behavior has caused immense and irreparable damage to Relator Mohammed's reputation in his community.

129. Defendant Kerry O'Brien again filed another False Pleading on April 26, 2017, again accusing Relator Mohammed of sexually abusing children even after all the False Allegations were dismissed by the Addison Police Department, Naperville Police Department, DuPage County Child Advocacy Centre, DCFS and by the Guardian Ad Litem who herself is an extended arm of the Court and the Judge in the Relator Mohammed's Divorce Proceedings, in order to qualify Defendant Fathima for a 'U' Visa or some kind of Immigration Status based on False Allegations of Domestic Violence and Child Abuse.

130. **Apart from the above-mentioned information, Defendant Fathima who happens to be the client of Defendant Kerry O'Brien, reported to the DCFS during her interview with Denise Plump, the Child Protection Investigator on 02/20/2017 at 11:54 AM that no sexual abuse of the children has occurred and children did not report any kind of sexual abuse to her and that all allegations of the sexual abuse against Relator Mohammed are False. The DCFS upon information by Defendant Fathima that no sexual abuse of children has occurred and the children did not report any kind of sexual abuse and that all allegations of the sexual abuse against Relator Mohammed are False determined that there was no outcry of any kind of sexual abuse by the children.**

131. **The Contents and allegations in the Motion for Supervised Visitation is also in total contradiction of Anita Tekriwal's unrebuttable statement that no sexual abuse of children has occurred.**

132. **On March 20, 2017 at 10:40 a.m., DCFS spoke to the case worker of Defendant Fathima at the Hamdard Center by the name of Anita Tekriwal who did not disclose to the DCFS any sexual abuse allegations relative to the children.**

133. **The same case worker from Hamdard Center, Anita Tekriwal was also the translator who translated the contents of the Motion for Supervised Visitation to Defendant Fathima.**

134. **The Certificate of Translation is attached to the Motion for Supervised Visitation which is signed by Anita Tekriwal.**

135. **After informing to the DCFS on March 20, 2017 at 10:40 AM that no sexual abuse has occurred, why would Anita Tekriwal would translate the same allegations of sexual abuse to Defendant Fathima in the Motion for Supervised Visitation which she had denied earlier to the DCFS on March 20, 2017?**

136. **Relator Mohammed is suing everyone at Hamdard Center but he is not suing Anita Tekriwal despite the attesting of her signature on False Certificate of Translation for the Motion for Supervised Visitation because she is innocent.**

137. **Not only Defendant Fathima signed on the Motion for Supervised Visitation against her will and wishes under the coercion from Maryam Mirza, Hamdia Razvi and Kerry O'Brien but Anita Tekriwal also attested her signature on the Certificate of Translation of the Motion for Supervised Visitation against her will and wishes under the coercion from Maryam Mirza, Hamdia Razvi and Kerry O' Brien.**

138. **The Statement by Defendant Fathima to the DCFS during her interview with Denise Plump, the Child Protection Investigator on 02/20/2017 at 11:54 AM that no sexual abuse of the children has occurred and children did not report any kind of sexual abuse to her and that all allegations of the sexual abuse against Relator Mohammed are False is unrebuttable.**

139. **The unrebuttable Statement by Defendant Fathima to the DCFS during her interview with Denise Plump, the Child Protection Investigator on 02/20/2017 at 11:54 AM that no sexual abuse of the children has occurred and children did not report any kind of sexual abuse to her and that all allegations of the sexual abuse against Relator Mohammed are False and the unrebuttable Statement of Anita Tekriwal to DCFS on March 20 2017, at 10:40 that no sexual abuse of children occurred, points towards a criminal conspiracy hatched by Defendant Kerry O'Brien and the Hamdard Center.**

140. **Defendant Kerry O'Brien continuous filing of False Pleadings against Relator Mohammed of Sexual Abuse of his children even after dismissal of the False Allegations by the Addison Police Department, Naperville Police Department, Dupage County Child Advocacy Centre, DCFS and by the Guardian Ad Litem and after the confession of Defendant Fathima, his client, to the DCFS during her interview with Denise Plump, the Child Protection Investigator on 02/20/2017 at 11:54 AM that no sexual abuse of the children has occurred and children did not reported any kind of sexual abuse to her and that all allegations of the sexual abuse against Relator Mohammed are False, not only raises strong inference of the filing of False Pleadings but also points to substantiated evidence against Defendant Kerry O'Brien of his participation in the criminal conspiracy against Relator Mohammed.**

141. As per information and belief, Defendant Kerry O'Brien has filed False Pleadings on behalf of Defendant Fathima without her permission or knowledge and against her wishes. For Example, the Motion for Supervised Visitation which was filed by Defendant Kerry O'Brien on March 29, 2017, is in total contradiction with Defendant Fathima's unrebuttable statement to the DCFS during her interview with Denise Plump, the Child Protection Investigator on 02/20/2017 at 11:54 AM that no sexual abuse of the children has occurred and children did not report any kind of sexual abuse to her and that all allegations of the sexual abuse against Relator Mohammed are False.

142. The Documented Evidence in the form of Police Reports, Dupage County Child Advocacy Center Investigation Report, DCFS Investigation Reports and Detective Elliott's Supplemental Report, points to a criminal conspiracy and places Kerry O'Brien at the very centre of that criminal conspiracy

143. Defendant Kerry O'Brien aided, abetted, encouraged and actively participated in filing of False Pleadings in Court, in transmission of False Police Reports and False DCFS Reports against Relator Mohammed in last one year.

144. Defendant Kerry O'Brien continues to device new methods of harassment in order to harass Relator Mohammed, every day of his life.

145. When Relator Mohammed was threatened in the mosque by Imran Mirza, he did not know who he was.

146. After few days, Relator Mohammed saw Imran Mirza again while he was leaving the mosque in his van.

147. The van belonged to "United HVAC and Electrical Inc".

148. Relator Mohammed searched online about "United HVAC and Electrical Inc" and found that it was owned by Imran Mirza. Imran Mirza is the ex-husband of Defendant Hamdia Razvi and a relative of Maryam Mirza and Qamar Razvi.

149. Hamdard Center and ICNA are laced with extremists and a breeding ground for extremists for next generation.

150. As per information and belief the Domestic Violence Shelters in Hamdard Center, ICNA and Apna Ghar are used only for the sole purpose of 'U' Visa Fraud, VAWA Petition Fraud, K1 Visa Fraud, F1 Visa Fraud, Asylum Fraud, Diversity Visa Lottery Fraud, USCIS Form N-648 Fraud and Marriage Fraud.

151. As per information and belief the address of the Domestic Violence Shelters at Hamdard Center, ICNA and Apna Ghar is used for the sole purpose of filing Fraudulent 'U' Visa Petitions, VAWA Petitions, K1 Visa Petitions, F1 Visa Petitions, Asylum Petitions, Diversity Visa Lottery Petitions, and Green Card Petitions based on sham Marriage by applicants who are not even living in the shelter.

152. As per information and belief people who are not even victim of Domestic Violence have lived in the Domestic Violence Shelters at Hamdard Center, ICNA and Apna Ghar for the sole purpose of filing Fraudulent 'U' Visa Petitions, VAWA Petition, K1 Visa Petitions, F1 Visa Petitions, Asylum Petitions, Diversity Visa Lottery Petitions and Green Card Petitions based on sham marriage.

153. All or most of the Defendants are also involved in 'U' Visa Fraud, VAWA Petition Fraud, K1 Visa Fraud, F1 Visa Fraud, Asylum Fraud, Diversity Visa Lottery Fraud, USCIS Form N-648 Fraud and Marriage Fraud.

154. As per information and belief money for filing Fraudulent USCIS Forms I-20, Fraudulent F1 Visas, Fraudulent U Visas, Fraudulent VAWA Petitions, Fraudulent K1 Visas, Fraudulent Green Cards based on sham marriages was exchanged by all or most of the Defendants in cash in United States, India, Pakistan, Bosnia-Herzegovina, Lebanon, Morocco and many other countries in Middle East and South-East Asia.

155. The following individuals at Hamdard Center, ICNA, Apna Ghar, Siddique Law Group and Prairie State are involved in the above-mentioned Visa and Immigration Benefits Fraud.

a) Mohammad Hamid

b) Kiran Siddiqui

c) Maryam Mirza

d) Hamdia Razvi

e) Imran Mirza

f) Farhana Siddiq

g) Qamar Razvi

h) Ruby Khan

i) Saamia Siddique

j) Hashim Siddique

k) Kerry O' Brien

l) Neha Gill

m) Mrs. Rasheed.

156. Defendant Mohammad Hamid's LinkedIn Page says that Hamdard Center specializes in 'U' Visa and USCIS Form N-648.

157. Recently Relator Mohammed received a call from a family member of Defendant Fathima from India. The caller informed Relator Mohammed that Hamdard Center's Agent in India is tormenting Defendant Fathima's family for a payment of $30,000 for filing of a 'U' Visa Certification or some other kind of Immigration Status for Defendant Fathima. Relator Mohammed informed the caller that he is not in touch with Defendant Fathima for more than a year and his divorce is pending and he told him that whatever Defendant Fathima needs to report, she should report to police.

158. **Wendy Muslielak is the Guardian Ad Litem of Relator Mohammed's children in his divorce proceedings.**

159. Defendant Kerry O'Brien aided, abetted, encouraged and actively participated in distribution of the False Police Reports and False DCFS Reports against Relator Mohammed within his community in turn causing irreparable harm to his reputation within his community and irreparable injury to his children.

160. Due to distribution of the False Police Reports and False DCFS Reports by Defendant Kerry O'Brien and the Hamdard Center, Relator Mohammed's children have suffered such an irreparable harm that it is impossible for his daughters to get married within his Community.

161. Due to distribution of the False Police Reports and False DCFS Reports by Defendant Kerry O'Brien and the Hamdard Center, Relator Mohammed's daughters have been labelled as impure.

162. On April 7, 2017 at 5:00 PM, Defendant Kerry O'Brien received Relator Mohammed's Financial Affidavit and the Bank Statements in which his Employment details were disclosed.

163. As soon as Defendant Kerry O'Brien received Relator Mohammed's Financial Affidavit and the Bank Statements, he forwarded Relator Mohammed's Employment details to the Hamdard Center.

164. Relator Mohammed worked for his Employer until 8:16 PM on April 7, 2017.

165. Defendant Kerry O'Brien in concert with Hamdard Center, called Relator Mohammed's Employer and reported that he was under investigation for sexual assault of his children even after dismissal of all the False Allegations against him by **the Addison Police Department, Naperville Police Department, Dupage County Child Advocacy Centre, DCFS and by the Guardian Ad Litem and after the confession of Defendant Fathima, his client, to the DCFS during her interview with Denise Plump, the Child Protection Investigator on 02/20/2017 at 11:54 AM that no sexual abuse of the children has occurred and children did not reported any kind of sexual abuse to her and that all allegations of the sexual abuse against Relator Mohammed are False.**

166. The urgency with which Defendant Kerry O'Brien forwarded Relator Mohammed's Employment details to the Hamdard Center on a weekend, points towards his participation in the conspiracy which resulted in termination of Relator Mohammed's Employment.

167. No one else other than Defendant Kerry O'Brien and Hamdard Center has the motive to cause harm to Relator Mohammed.

168. Relator Mohammed's Employer deemed the situation so serious that they decided not to wait until Monday morning and terminate his Employment on April 8, 2017 which was a Saturday.

169. **As per information and belief, Defendant Kerry O' Brien has conspired with Hamdard Center in the filing of all False Court Actions, False Police Reports, False DCFS Reports and a False Report to the Dupage County Child Advocacy Center in order to qualify Defendant**

**Fathima for a 'U' Visa or some kind of Immigration Status based of false allegations of abuse and sexual assault of Relator Mohammed's children**.

170.     Defendant Maryam Mirza got married to Mohammad Asad Gilani in December 2001.

171.     Mohammad Asad Gilani a citizen of Pakistan was employed by the Government of Lake County, State of Illinois as a Civil Engineer at the time of his marriage to Maryam Mirza.

172.     As per testimony of Mohammad Asad Gilani and on the basis of documented evidence presented in a Court of Law by Mohammad Asad Gilani, Defendant Maryam Mirza entered into a marriage with him only to enter United States and remain in United States permanently.

173.     At the time of marriage to Defendant Maryam Mirza, Mohammad Asad Gilani was holding a Non-Immigrant Status of a H1B Visa.

174.     On December 26, 2001, Defendant Maryam Mirza obtained a Spousal Visa (H4) from Embassy of United States, Islamabad, Pakistan, in the capacity of Mohammad Asad Gilani's Spouse.

175.     Shortly after obtaining the H4 Visa, Defendant Maryam Mirza joined her husband, Mohammad Asad Gilani in Waukegan, IL.

176.     After cohabiting for few months Mohammad Asad Gilani expressed his displeasure in the marriage since Defendant Maryam Mirza was not truthful in the past; she had informed Mohammad Asad Gilani that her various degrees from educational institutions in Pakistan were forgeries.

177.     One of the educational credentials of Maryam Mirza has a typing error and another is signed in not only handwriting similar to that of Maryam Mirza but it is signed in the name of "M.Javaid" and another educational credential has no signature at all.

178.     Defendant Maryam Mirza's maiden name was Maryam Javaid.

179.     Relator Mohammed believes the odds of the Assistant Controller's (Who signed on Maryam Javaid's Result Intimation Card from the University of the Punjab) name to be M. Javaid is one in a billion.

180.     Defendant Maryam Mirza forged a Result Intimation Card from University of the Punjab, Pakistan on or about August 12, 1998 and she used that Forged Result Intimation Card to fraudulently apply for a USCIS Form I-20 from College of Dupage and subsequently used the same Forged Result Intimation Card to apply for a F1 Visa (Student Visa) and obtained the F1 Visa whilst she was present in United States.

181.     Defendant Maryam Mirza again forged a Semester Grade Report from The Pak-American Institute of Management Sciences at 2:18 PM (Pakistan Time) on December 24, 2001 and she used that Forged Semester Grade Card to fraudulently apply for a USCIS Form I-20 from College of DuPage and subsequently used the same Forged Semester Grade Card to apply for a F1 Visa (Student Visa) and obtained the F1 Visa whilst she was present in United States.

182. Between August 21, 2002 and December 20, 2002, Maryam Mirza also submitted Falsified Financial Documents in support to obtain USCIS I-20 from College of DuPage and subsequently submitted the same Falsified Financial Documents in support of her Petition for F1 Visa to USCIS on December 20, 2002.

183. Defendant Maryam Mirza's USCIS Form I-539, Petition for Change of Non-Immigrant Status from H4 to F1 was received by the USCIS on December 20, 2002.

184. As per information, belief and documented evidence presented in a Court of Law by Mohammad Asad Gilani, Maryam Mirza has two Pakistani Passports under two different identities which has two different Date of Births.

185. As per information and belief, Defendant Maryam Mirza between the year 1993 and December 2001, had applied for a US Visa in Pakistan prior to her meeting and prior to her marriage with Mohammad Asad Gilani using her Pakistani Passport in which her Date of Birth is March 3, 1978 and her application for the US Visa was denied.

186. Shortly before getting married to Mohammad Asad Gilani, Defendant Maryam Mirza obtained another Pakistani Passport with her Date of Birth as March 3,1976, in order to conceal from US Embassy in Islamabad, Pakistan, her previous denial of US Visa when she applied and obtained a H4 Visa on December 26, 2001 after her marriage with Mohammad Asad Gilani.

187. Maryam Mirza a citizen of Pakistan having two Pakistani Passports in two different identities poses immediate danger to National Security of United States.

188. As per the testimony of Mohammad Asad Gilani, Maryam Mirza had started the arrangements for her visa for travel to United States even before she was married to him.

189. In April of 2002, Defendant Maryam Mirza and Mohammad Asad Gilani agreed to divorce and she asked Mohammad Asad Gilani to buy her a plane ticket to Pakistan so that she can divorce him in Pakistan.

190. Defendant Maryam Mirza left United States for Pakistan on April 4, 2002.

191. On April 13, 2002, Mohammad Asad Gilani mailed to the authorities in Pakistan an application for a divorce which, under the laws and traditions of Pakistan, may be granted by such remote application.

192. The Application for divorce in Pakistan requires a separation period of three months.

193. On or about April 21, 2002, without notice to Mohammad Asad Gilani, Defendant Maryam Mirza arrived in United States and arrived unannounced at Mohammad Asad Gilani's residence in Waukegan, IL, with a number of her relatives, demanding money and threatening to make his life difficult if he did not assist her in remaining in United States.

194. At that time Mohammad Asad Gilani agreed to allow Defendant Maryam Mirza to move back in with him, and Mohammad Asad Gilani resided with Defendant Maryam Mirza together until May 14, 2002, at which time a letter was received by Defendant Maryam Mirza from Embassy of United States in Islamabad, Pakistan, notifying her that her visa had been revoked because of the Application for Divorce which Mohammad Asad Gilani had filed.

195. Defendant Maryam Mirza still resided with Mohammad Asad Gilani voluntarily and without notice to Mohammad Asad Gilani left her marital residence on August 21, 2002.

196. On August 21, 2002, Maryam Mirza left a note for Mohammad Asad Gilani.

197. On August 22, 2002, Maryam Mirza filed a False Petition for Order of Protection in DuPage County, Illinois, and, without prior notice to Mohammad Asad Gilani obtained an Emergency Order of Protection on that Date.

198. In the note which Maryam Mirza left for Mohammad Asad Gilani on August 21, 2002 at her marital residence, she only expressed her wish of not going back to Pakistan and she never mentioned that she is afraid of Mohammad Asad Gilani.

199. On September 11, 2002, Petition for Order of Protection of Maryam Mirza against Mohammad Asad Gilani was denied and the Emergency Order of Protection against him was also vacated '*nunc pro tunc*' from the Date, the Emergency Order was entered.

200. After Defendant Maryam Mirza's Petition for Order of Protection was dismissed by the court, Defendant Maryam Mirza enrolled in College of DuPage using the Forged Report Intimation Card from the University of the Punjab, Pakistan and a Forged Semester Grade Card from the The Pak-American Institute of Management Sciences, Pakistan.

201. Mohammed Asad Gilani in his Motion for Rehearing and/or to Vacate the Exparte Emergency Order of Protection, stated "That should the parties not remain married, the Petitioner is well aware that in order for her to stay in this country and obtain an extended Visa or Citizenship, she must allege that she is in need of protection to fall under the Spousal Protection Clause of Unites States Immigration Laws".

202. Relator Mohammed has verified with University of the Punjab in Pakistani and the University has informed him that, they have no record of a Student by the name of Maryam Javaid with Roll # 025765 and Registered #96-z-205335.

203. Relator Mohammed has verified with The Pak-American Institute of Management Sciences and they have informed him that, they have no record of a Student by the name of Maryam Javaid with ID #971236.

204. Defendant Maryam Mirza obtained the USCIS Form I-20 from the College of DuPage in order to apply for a Student Visa (F1), only in order to stay in United States.

205. When Defendant Maryam Mirza Fraudulently obtained USCIS Form I-20 form the College of DuPage, she had no intention of attending the College or completing the Course she got enrolled in.

206. After fraudulently obtaining the USCIS Form I-20, Defendant Maryam Mirza applied for a F1 Visa with USCIS based on the fraudulently obtained USCIS Form I-20 using Forged Report Intimation Card from the University of the Punjab, Pakistan and a Forged Semester Grade Card from the The Pak-American Institute of Management Sciences, Pakistan.

207. As per Maryam Mirza's testimony her Petition for a F1 Visa was received by the USCIS on December 20, 2002.

208. As per testimony of Mohammad Asad Gilani and on the basis of the documented evidence presented to a Court of Law, Defendant Maryam Mirza is using two identities. Her Birth Certificates and her educational credentials from Pakistan reflect her Date of Birth as 03/03/1978 but her Passport issued by Islamic Republic of Pakistan bearing the Passport # K955050, reflects her Date of Birth as 03/03/1976.

209. By using the Forged Report Intimation Card from the University of the Punjab, Pakistan and a Forged Semester Grade Card from the The Pak-American Institute of Management Sciences, Pakistan in order to fraudulently obtain USCIS Form I-20 and subsequently applying and obtaining F1 Visa, Maryam Mirza has committed Student Visa Fraud (F1 Visa) and Immigrations Benefits Fraud.

210. Since her arrival in United States in January 2002, Maryam Mirza is involved in various frauds on United States including Visa Fraud, Immigration Benefits Fraud, VAWA Petition Fraud, 'U' Visa Fraud etc.

211. As per information and belief since December 2001, Maryam Mirza has sold Forged Educational Credentials, Degrees, Diplomas and other Educational Certificates and Falsified Financial Documents to more than 2000 Foreign Students present in United States and outside United States mainly in Pakistan, in order for those Foreign Students to fraudulently obtain USCIS Forms I-20 from various Colleges and Universities across United States and subsequently obtain F1 Visas based on Forged Educational Credentials, Degrees, Diplomas and other Educational Certificates and Falsified Financial Documents.

212. Not only Maryam Mirza had tried to obtain Immigration Status for herself based on False Order of Protection against Mohammad Asad Gilani but she has continued to help other people including

Residents at the Domestic Violence Shelter at Hamdard Center, in filing of False Petitions for Order of Protections, False Police Reports and False DCFS Reports in order for such people to gain Immigration Status based on False allegations of Domestic Violence and Child Abuse.

213. **Maryam Mirza, Hamdia Razvi, Mohammad Hamid and Kiran Siddiqui are also practicing Immigration Law without a License to practice Law, from the premises of the Hamdard Center for Health and Human Services in Addison and Chicago, IL.**

214. **Maryam Mirza is also practicing medicine as a Clinical Psychologist without a License from the premises of the Hamdard Center for Health and Human Services in Addison and Chicago, IL.**

215. Maryam Mirza claims in an interview which she gave to "Voice of America "that she is a Clinical Pschycologist and she counsels children at Hamdard Center as a 'Clinical Pschycologist'. Relator Mohammed has the Audio Clip of Maryam Mirza's interview where she claims that she is a 'Clinical Psychologist'.

216. Relator Mohammed checked with IDFPR and they have informed me that she is not Licensed Clinical Pschycologist.

217. There is a pending IDFPR investigation against Maryam Mirza for practicing as a 'Clinical Psychologist' without a License.

218. Maryam Mirza also advertised on the Facebook that she is a Clinical Psychologist. Relator Mohammed has the copy of that Facebook Advertisement.

219. Maryam Mirza also spoke as Clinical Psychologist at a Conference on Sexual Violence at American Islamic College in Chicago on April 10, 2016. The Document from this Conference says that she earned a Master's Degree in Clinical Psychology from Northwestern University in 2009.

220. Relator Mohammed believes either she has no Master's Degree in Clinical Psychology from Northwestern University or she has forged a Master's Degree in Clinical Psychology from Northwestern University.

221. To this day Maryam Mirza remains a threat to the National Security of United States as her true identity is unknown as she is using two different Identities with two different Date of Births.

222. The San Bernandino shooter, Rizwan Farook was born in Chicago and was raised in Cook and DuPage Counties. Before moving to California, he lived with his parents in Darien, IL. He attended the mosques and Islamic Centers in Cook and DuPage Counties. Relator Mohammed has heard in his local mosque that Rizwan Farook and his family has deep association with Hamdard Center. Hamdard Center has presence in all the Mosques and Islamic Centers in Cook and DuPage Counties. There is preponderance of evidence that Rizwan Farook was radicalized by his parents and by the

Mosques and Islamic Centers in Cook and DuPage Counties and by radical elements and extremists in Hamdard Center. As a result of the radicalization by his parents, by the Mosques and Islamic Centers in Cook and DuPage Counties and by the radical elements and extremists in Hamdard Center, Rizwan Farook gunned down and killed 14 innocent people and seriously injured 22 more people. It can be said that Rizwan Farook was the first home grown terrorist in United States. Rizwan Farook is the product of the Mosques and Islamic Centers of Cook and DuPage Counties and the radical elements in Hamdard Center.

223.    Noor Salman, the wife of Orlando shooter, Omar Mateen was brought up in Oak Lawn, IL. She lived in Oak Lawn and Berwyn before she married Omar Mateen on September 29, 2011. She moved to Florida after her marriage. Noor Salman attended the Mosques and Islamic Centers in Cook and DuPage Counties until her marriage. It is more likely than not that she had come under the influence of radical elements in Hamdard Center and in the Mosques and Islamic Centers in Cook and DuPage Counties at some stage in her life while she was living in Oak Lawn and Berwyn. Noor Salman knew that her husband bought automatic weapons and ammunition on war scale just before the massacre but she did not inform the law enforcement agencies. If Noor Salman had alerted the law enforcement, 49 innocent people would not have been gunned down and 53 more would have not received serious injuries.

224.    The biggest terrorist attacks on United States soil after 9/11 has a disturbing and direct connection to the Mosques and Islamic Centers in Cook and DuPage Counties.

225.    Rizwan Farook and Omar Mateen both of them are home grown terrorists who has direct connection to the Mosques and Islamic Centers in Cook and DuPage Counties.

226.    The radical elements in Hamdard Center under the garb of providing social services are radicalizing whoever comes and seeks help from them.

227.    The Mosques and Islamic Centers in Cook and DuPage Counties and radical elements in Hamdard Center have contributed directly or indirectly to the two biggest terrorist attacks in United States after 9/11, resulting in death of 63 innocent people and serious injuries to 75 more innocent people.

228.    Relator Mohammed feels the pain of the people who has lost their loved ones. It's a personal loss to Relator Mohammed and great source of regret, shame and grief that these two individuals who gunned down these innocent people belong to his religion and these individuals once attended the same Mosques and Islamic Centers where Relator Mohammed and his children attend.

229.    **Tahawwur Hussain Rana** who was charged and arrested along with his friend **David Coleman Headley** ( Born as **Daood Sayed Gilani**) in Chicago on October 18, 2009 for plotting attacks on the offices of Jyllands-Posten, the newspaper which published the controversial cartoons of Prophet

Mohammed and for 26/11 Terrorist Attacks in Mumbai, India in which 166 innocent people lost their lives and 308 more people received serious injuries. Mr. Rana is not only a close friend of Mohammad Hamid, the CEO of Hamdard Center but Mr. Rana ran his immigration services business known as **First World Immigration Services** from 2809 West Devon Ave, Chicago, IL 60659, only few steps away from Hamdard Center's Office in Chicago. Hamdard Center's Chicago office is located at 1542 West Devon, Chicago, IL 60626.

230. On June 9, 2011 jury in United States District Court, Northern District of Illinois, Eastern Division, convicted Mr. Rana of supporting terrorism by providing material support to Lashkar-e-Taiba, a Terrorist organization and for planning an aborted plot to bomb a Danish newspaper, Jyllands-Posten.

231. On January 24, 2013, United States District Court, Northern District of Illinois, Eastern Division sentenced David Headley (Born as Daood Sayed Gilani) to 35 years in Prison for his role in Mumbai Terrorist Attacks after he pleaded guilty.

232. It is alleged and the word was going around that Tahawwur Hussain Rana contributed funds in an unknown amount for radicalizing of people including children who are seeking help in the form of social services from Hamdard Center.

233. The 26/11 Terrorist Attacks in Mumbai, India, in which 166 innocent people were massacred and 308 more people seriously injured has its roots in the Mosques and Islamic Centers in Cook and DuPage County and were planned in the Mosques and Islamic Centers of Cook and DuPage Counties and executed from Pakistan.

234. Raja Lahrasib Khan from Chicago personally provided hundreds of dollars to an alleged terrorist leader with whom he had met in his native Pakistan, was sentenced to 7.5 years' in Federal prison for attempting to provide additional funds to the same individual after learning he was working with Al-Qaeda. Raja Lahrasib Khan, a Chicago Taxi Driver and native of Pakistan who became a naturalized U.S. citizen in 1988, pleaded guilty in February 2012 to one count of attempting to provide material support to a foreign terrorist organization, following his arrest in March 2010. Mr. Khan, 58, of the city's north side, displayed "toxic altruism" U.S. District Judge James Zagel said in imposing the 90-month sentence, followed by lifetime supervised release, in Federal Court in Chicago. In addition, the judge said it was a "profoundly aggravating factor" that Khan's crime occurred after he voluntarily chose to become a naturalized U.S. Citizen. Raja Lahrasib Khan attended the Mosques and Islamic Centers in Cook and DuPage County.

235. A Bolingbrook man accused of trying to fly overseas to join the Islamic State terrorism group pleaded guilty in an unusual deal that calls for him to be monitored by the government until at least the year

2034, including frequent searches of his phone and online communications. Mohammed Hamzah Khan, now 20, faces up to 15 years in prison under federal sentencing guidelines, but prosecutors agreed to recommend a sentence of five years behind bars if he continues to cooperate with law enforcement. He pleaded guilty to one felony count of attempting to provide material support to a terrorist organization. After his release from prison, Khan would remain under court supervision for at least 15 years, an unusually long period, according to his 20-page plea agreement. Khan also must seek "psychological and violent extremism counseling," perform at least 120 hours of community service each year and allow court personnel to search his cellphone, email and computer four times a month for the first 7 1/2 years, according to the plea agreement. In a case that made national headlines, Khan was arrested in October, 2014 at age 19 after he and two younger siblings passed through security at O'Hare International Airport and were walking to their departure gate to board a jet to Vienna with a connection to Istanbul, according to prosecutors. His sister, then 17, and 16-year-old brother were questioned at the airport by the FBI but were not charged. According to his plea agreement, Khan and his sister had been talking online with Islamic State members in Syria who offered to help them get to the Middle East to join the terrorist organization. Khan admitted plotting to travel to Turkey so the contact could guide him and his siblings across the border, according to the reports. To fund the trip, Khan got a job as a stock clerk at a Menards store in July 2014. By September, he had saved enough to buy three round-trip tickets for himself and his siblings at a cost of $2,679, according to his plea agreement. Khan told agents he expected his position with Islamic State to be "some type of public service, a police force, humanitarian work or a combat role," according to the charges. Notes left by the siblings for their parents — who were not aware of the plot — begged them not to tell law enforcement, authorities said. Khan's family is from India but has lived in the Chicago suburbs for many years, Khan's Attorney Thomas Durkin has said. Khan was born in the United States, graduated from high school and attended one year at Benedictine University in Lisle. He has no prior criminal history. Mohammed Hamzah Khan was radicalized in the Mosques and Islamic centers in and around DuPage and Cook Counties.

236.     Thousands of Madrasas operating out of Pakistan and Saudi Arabia has infiltrated United States. It is estimated that around 40,000 Madrasas out of Pakistan and Saudi Arabia are imparting teachings based on Radical Islamic Beliefs and Jihadi Ideology and are operating in United States via Full-Time Online Madrasas. Relator Mohammed has been to around 10 Mosques and Islamic Centers in Cook and DuPage Counties and he found that most of the Mosques and Islamic Centers and Social Service Organizations such as Hamdard Center have done tie up with these Madrasas operating Full-Time Online Madrasas imparting Radical Islamic Teachings and Jihadi Education to children in United

States. In other words, the Madrasas from Pakistan and Saudi Arabia have reached the living room of many Muslim Families in United States. These Madrasas are being wired money via Western Union and MoneyGram. Many of these Madrasas are being operated by various Terrorist Organizations in Pakistan and the money which is being wired from United States is reaching this Terrorist Organizations.

237. By preponderance of evidence, Hamdard Center and most of the Mosques and Islamic Centers in Cook and DuPage Counties is not a place where children can live or come in any kind of contact with radical elements and extremists.

238. Between September 2016 and present date, Hamdard Center and ICNA spread rumors within Relator Mohammed community that he helped United States Government in prosecution of a Jihadi Terrorist Organization from Pakistan and he also helped United States Government in locating Osama Bin Laden in Pakistan.

239. Hamdard Center and ICNA informed members of Relator Mohammed's community that despite being a Muslim, he helped United States Government in prosecution of a Muslim Jihadi Organization from Pakistan and in locating Osama Bin Laden in Pakistan and hence Relator Mohammed is not a Muslim since he helped United States Government against a Muslim Nation (Pakistan) and helped locating a Muslim Holy Warrior (Osama Bin Laden).

240. Hamdard Center and ICNA incited members of Relator Mohammed's community to punish him for helping United States Government against a Muslim Nation (Pakistan) and in locating a Muslim Holy Warrior (Osama Bin Laden).

241. Relator Mohammed had helped United States Government in the past in a different case but he did not help United States Government in prosecution of any Jihadi Organization from Pakistan and he did not help United States Government in locating Osama Bin Laden in Pakistan.

242. Relator Mohammed has nothing to do with Pakistan and he has never visited Pakistan.

243. Relator Mohammed is a Citizen of Republic of India.

244. Defendant Fathima had informed Hamdard Center and ICNA that Relator Mohammed received his Immigration Status because he helped United States Government.

245. As per information and belief Hamdard Center celebrated the attacks in San Bernandino and Orando.

246. If you want to know, how a traitor looks like? You look at the individuals mentioned in this Complaint.

247. The individuals mentioned in this Complaint are pure evil.

248. Hamdard Center is nothing but a front for Immigration Fraud and all sorts of Frauds against United States.

249. The sooner the better it will be, if Hamdard Center is shut down and all individuals involved in criminal activities are brought to justice.

250. Defendants Saamia Siddique and Hashim Siddique are the Immigration Attorneys who are working in concert with Hamdard Center, Apna Ghar and Prairie State Legal Services in filing Fraudulent 'U' Visa Petitions, Fraudulent VAWA Petitions and other Fraudulent Immigration Benefits Petitions.

251. Doe Defendants are working in concert with Hamdard Center and ICNA in committing K1 Visa Fraud and Marriage Fraud.

252. Doe Defendants arrange United States Citizens to enter sham marriages for Green Card for clients of Hamdard Center and ICNA in exchange for money.

253. Doe Defendants arrange United States Citizens to file Fraudulent K1 Visa Petitions for clients of Hamdard Center and ICNA who are in India, Pakistan and Bangladesh in exchange for money.

254. As per information and belief Doe Defendants work in concert with Hamdard Center and ICNA in committing other Immigrations Benefits Fraud also.

255. **As per information and belief, the beneficiaries who received Immigration Benefits by Fraudulent 'U' Visa Petitions through Hamdard Center are back living with their so-called abusers after approval of their 'U' Visa Petitions.**

256. **Relator Mohammed has documented evidence of beneficiaries who received Immigration Benefits by Fraudulent 'U' Visa Petitions through Hamdard Center are back living with their so-called abusers after approval of their 'U' Visa Petitions.**

257. Most of the Defendants in this complaint are involved in the following Federal Violations-:

    a) Unlawful Bringing of Aliens into United States of America (8 U.S. Code § 1323)

    a) Unlawful Bringing in and Harboring Certain Aliens (8 U.S. Code § 1324)

    b) Unlawful Employment of Aliens (8 U.S. Code § 1324(a))

    c) Unfair Immigration-Related Employment Practices (8 U.S. Code § 1324(b))

    d) Fraud in Foreign Labor Contracting (18 U.S. Code § 1351(a))

    e) Fraud and Misuse of visas, permits and documents (18 U.S. Code § 1546)

    f) Conspiracy to defraud The United States of America (18 U.S. Code § 371)

    g) Prohibited Activities (U.S. Code § 1962)

    h) 18 USC 1001 and 1002 - Fraud/False Statements or entries generally.

    i) Marriage Fraud—8 U.S.C. § 1325(c)

    j) K1 Visa Fraud.

k) 'U" Visa Fraud and VAWA Petition Fraud.

l) Asylum Fraud.

m) USCIS Form N-648 Fraud.

n) Diversity Visa Lottery Fraud.

o) Citizenship Fraud.

p) Mail Fraud

q) Wire Fraud.

r) By committing crimes mentioned in this Complaint, the defendants have violated False Claims Act (31 U.S. Code § 3729)

253. In violation of Title 18, United States Code, Section 1546(a) and Section 2, from the year 1992 to the present date, in Cook and the DuPage Counties in the jurisdiction of this court and elsewhere across the length and breadth of United States and at various overseas missions of United States across the globe, all or most of the Defendants knowingly falsely obtained and made Non-immigrant, Immigrant Visas and Documents, namely Fraudulent USCIS Forms I-20, F1 Visas, 'U' Visas, VAWA Petitions,K1 Visas, Asylum Petitions and Green Cards based on sham marriages and uttered, used, attempted to use, possessed, obtained, accepted, and received said Non-Immigrant and Immigrant Visas and other Documents prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, knowing such Visas and Documents had been falsely made and procured by means of False Claims and Statements and otherwise procured by Fraud and Unlawfully obtained.

254. In violation of Title 18, United States Code, Sections 1001 and 2, in Cook and the DuPage Counties in the jurisdiction of this court and elsewhere across the length and breadth of United States and at various overseas missions of United States across the globe, all or most of the Defendants in a matter within the jurisdiction of the executive branch of the United States, namely, the United States Department of Homeland Security, United States Citizenship and Immigration Services and the United States Department of State, knowingly and willfully (a) made materially false, fictitious, and fraudulent statements and representations, (b) made and used false writings and documents knowing them to contain materially false, fictitious, and fraudulent statements and entries, and (c) falsified, concealed, and covered up by trick, scheme, and device, certain material facts in False Petitions for False VAWA Petitions, False K1 Visa Petitions, False 'U' Visa Petitions, Fraudulent USCIS Forms I-20, False F1 Visa Petitions, False Asylum Petitions and Fraudulent Green Card Petitions based on sham marriages and submitted to United States Department of Homeland Security, United States Citizenship and Immigration Services and the United States Department of State which contained

materially false and fraudulent representations and used materially false writings and documents knowing them to contain materially false, fictitious, and fraudulent statements and entries.

255.　In violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I), in Cook and the DuPage Counties in the jurisdiction of this court and elsewhere across the length and breadth of United States and at various overseas missions of United States across the globe, all or most of the Defendants knowingly and intentionally conspired and agreed with others, for the purpose of commercial advantage and private financial gain , to encourage and induce aliens to reside in the United States, knowing and in reckless disregard of the fact that such residence was and would be a violation of law.

256.　In violation of Title 18, United States Code, Section 371, in Cook and the DuPage Counties in the jurisdiction of this court and elsewhere across the length and breadth of United States and at various overseas missions of United States across the globe, all or most of the Defendants did knowingly and intentionally conspired and agreed with others to commit an offense against the United States, that is, to utter, use, attempt to use, possess, obtain, accept, and receive Non-Immigrant, Immigrant Visas and Documents, namely False VAWA Petitions, False K1 Visa Petitions, False 'U' Visa Petitions, Fraudulent USCIS Forms I-20, False F1 Visa Petitions, False Asylum Petitions and other documents proscribed by statute and regulation for entry into and as evidence of authorized stay in the United States, knowing that the VAWA Petitions, K1 Visa Petitions, 'U' Visa Petitions, USCIS Forms I-20, F1 Visa Petitions, Asylum Petitions and other documents had been procured by means of false claims and statements and otherwise procured by fraud and unlawfully obtained, contrary to Title 18, United States Code, Section 1546(a). In furtherance of the conspiracy and to affect its unlawful objects, the defendants committed and caused to be committed the overt acts mentioned in this complaint and hence violated Title 18, United States Code, Section 371.

257.　In violation of Title 8, United States Code, Section 1323, in Cook and the DuPage Counties in the jurisdiction of this court and elsewhere across the length and breadth of United States, all or most of the Defendants brought into United States and/or transported from one state to another within United States, aliens who did not had a valid passport or an unexpired visa.

258.　In violation of Title 8, United States Code, Section 1343 and 2, in Cook and the DuPage Counties in the jurisdiction of this court and elsewhere across the length and breadth of United States, all or most of the Defendants for last fifteen years through to the present date, devised and intended to devise a scheme to defraud USCIS and USDOS, and did knowingly used and caused to be used interstate wire communications for executing the scheme and attempting to do so. To accomplish its fraudulent purposes, all or most of the Defendants, aided and abetted other individuals known

and unknown, engaged in and caused various acts and transactions which are designed to and which enabled the Defendants to attempt in applying for and in obtaining False VAWA Petitions, False K1 Visa Petitions, False 'U' Visa Petitions, Fraudulent USCIS Forms I-20, False F1 Visa Petitions, False Asylum Petitions, False Green Card Petitions based on sham marriages for themselves or for other unknown individuals. In last fifteen years, for the purposes of executing the scheme and in furtherance of the scheme, or attempting to do so, the Defendants, aided and abetted other known and unknown individuals, for the purpose of carrying out the scheme to defraud and attempting to do so, did knowingly transmit and caused to be transmitted by means of wire and radio communications in interstate commerce, certain writings, signals or sounds. These transmissions in interstate commerce consisted of communications by Mobile Phones, Fixed Land Line Phones and Internet as set forth below:

a) Communications to execute crimes mentioned in this Complaint via Mobile Phones, Fixed Land Line Phones, AOL Messenger, MSN Messenger, Yahoo Messenger and Smartphone Applications such as Facebook Messenger, Whatsapp, Line, Hike, Viber and Emails etc.

b) Transmitted or caused to be transmitted False Police Reports, False DCFS Reports and False Report to DuPage County Child Advocacy Center using Mobile Phones and Fixed Land Line Phones in order to qualify Defendant Fathima for a 'U' Visa based on transmitted False Police Reports, False DCFS Reports and False Report to DuPage County Child Advocacy Center.

c) Filed False Petition for Order of Protection and False Petition for Supervised Visitation using the website, www.i2file.net in order to qualify Defendant Fathima for a 'U' Visa based on the False Petition for Order of Protection.

259.    In violation of Title 8, United States Code, Section 1341 and 2, in Cook and DuPage Counties in the jurisdiction of this court and elsewhere across the length and breadth of United States, all or most of the Defendants for last fifteen years through to the present date, devised and intended to devise a scheme to defraud USCIS and USDOS, and did knowingly used and caused to be used the U.S. Mails for the purpose of executing the scheme and attempting to do so. To accomplish its fraudulent purposes, all or most of the Defendants, aided and abetted other individuals known and unknown, engaged in and caused various acts and transactions which are designed to and which enabled the Defendants to attempt in applying for and in obtaining False VAWA Petitions, False K1 Visa Petitions, False 'U' Visa Petitions, False F1 Visa Petitions, False Asylum Petitions, False Green Cards based on sham marriages for themselves or for unknown individuals. The Defendants for the

purpose of executing the aforesaid scheme and artifice, and attempting to do so, knowingly caused to be delivered by mail according to the direction thereon, from Cook and the DuPage Counties in the State of Illinois, in the jurisdiction of this court and elsewhere across the length and breadth of United States, to USCIS Service Centers in California, Nebraska, Vermont and Texas, a letter containing certain documents along with Fraudulent Petitions for False VAWA Petitions, False K1 Visa Petitions, False 'U' Visa Petitions, Fraudulent USCIS Forms I-20, False F1 Visa Petitions, False Green Card Petitions based on sham marriages for themselves or for other unknown individuals.

260. **The Crimes committed by most or all the Defendants mentioned in this Complaint, poses a great threat to National Security of United States.**

### Schemes to defraud United States.

### Scheme # 1
### Scheme and Modus Operandi for Filing False 'U' Visa Petitions and obtaining 'U' Visas based on False Claims of Domestic Abuse and Child Abuse
### (Hamdard, ICNA, Apna Ghar, Prairie State and Siddique Defendants)

261. Hamdard, ICNA and Apna Ghar Defendants file, False Police Reports, False DCFS Reports, and False Petitions for Order of Protections for Domestic Violence and Child Abuse against the husband whose wife is residing in their Domestic Violence Shelter in order to qualify the wife for a 'U' Visa Certification.

262. Hamdard, ICNA and Apna Ghar Defendants file, False Police Reports, False DCFS Reports, and False Petitions for Order of Protections for Domestic Violence and Child Abuse against the husband whose wife is **not even** residing in their Domestic Violence Shelter in order to qualify the wife for a 'U' Visa Certification.

263. Hamdard, ICNA and Apna Ghar Defendants used the address of their Domestic Violence Shelters only for the sake of filing False 'U' Visa Petitions and False VAWA Petitions.

264. After the filing of the Petition for Order of Protection, the husband would cooperate in this scheme and he would not turn up for the Hearing for Plenary Order of Protection or he would not contest the False Claims in the Petition for Order of Protection.

265. Once the husband does not turn up for the Hearing for Plenary Order of Protection or does not contest the False Claims in the Petition for the Plenary Order of Protection, the wife is granted her Petition for Order of Protection by default.

266.  Once the wife's Petition for the Order of Protection is granted with the help from lawyers from Prairie State, Hamdard, ICNA and Apna Ghar Defendants would approach the Siddique Defendants to file 'U' Visa Certification for the wife based on the Plenary Order of Protection.

267.  Then Siddique Defendants would file for the 'U' Visa Certification with the concerned Law Enforcement Agency for the wife and subsequently would apply for the 'U' Visa with USCIS.

268.  Once the 'U' Visa is granted, the wife goes back to live with the husband against whom she had filed and obtained the Plenary Order of Protection.

269.  The wife would then help the husband file and obtain 'U1' Visa as the Derivative Family member of the 'U' Visa holder.

270.  The money for helping in filing and obtaining Fraudulent 'U' Visas was paid by the beneficiaries of the Fraudulently obtained 'U' Visa to the agents of Hamdard, ICNA and Apna Ghar in the form of cash in United States, India, Pakistan, Bangladesh, Bosnia-Herzegovina, Lebanon, Morocco and many other countries in Middle-East and South-East Asia.

## Scheme # 2
### Scheme and Modus Operandi for Filing False VAWA Petitions and in obtaining Green Cards based on False Claims of Domestic Abuse and Child Abuse
### (Hamdard, ICNA,Apna Ghar , Prairie State and Siddique Defendants)

271.  Hamdard, ICNA and Apna Ghar Defendants file, False Police Reports, False DCFS Reports, and False Petitions for Order of Protections for Domestic Violence and Child Abuse against the husband whose wife is residing in their Domestic Violence Shelter in order to qualify the wife for a VAWA Petition.

272.  Hamdard, ICNA and Apna Ghar Defendants file, False Police Reports, False DCFS Reports, and False Petitions for Order of Protections for Domestic Violence and Child Abuse against the husband whose wife is **not even** residing in their Domestic Violence Shelter in order to qualify the wife for a VAWA Petition.

273.  Hamdard, ICNA and Apna Ghar Defendants used the address of their Domestic Violence Shelters only for the sake of filing False 'U' Visa Petitions and False VAWA Petitions.

274.  Once the wife's Petition for the Order of Protection is granted or denied with the help from lawyers from Prairie State, Hamdard, ICNA and Apna Ghar Defendants would approach the Siddique Defendants to file VAWA Petition for the wife based on the Petition for the Order of Protection.

275.  Then Siddique Defendants would file for the VAWA Petitions with USCIS.

276.  The money for helping in filing and obtaining Green Card based on Fraudulent VAWA Petitions was paid by the beneficiaries of the Fraudulently obtained Green Cards to the agents of Hamdard,

ICNA and Apna Ghar in the form of cash in United States, India, Pakistan, Bangladesh, Bosnia-Herzegovina, Lebanon, Morocco and many other countries in Middle-East and South-East Asia.

## Scheme # 3
## Scheme and Modus Operandi for Filing and Obtaining False USCIS Forms I-20 and F1 Visas (Student Visas)
## (Hamdard, ICNA and Apna Ghar Defendants)

277.     Hamdard, ICNA and Apna Ghar Defendants sell Forged Educational Credentials, Diplomas, Certificates from Foreign Colleges and Universities and Financial Documents to the Residents of their Domestic Violence Shelters and other Foreigners residing in United States and outside United States.

278.     After purchasing Forged Educational Credentials, Diplomas, Certificates from Foreign Colleges and Universities and Financial Documents, the Residents of the Domestic Violence Shelters at Hamdard, ICNA and Apna Ghar and other Foreigners would apply and obtain USCIS Forms I-20 from various Colleges and Universities across the length and the breadth of United States based on the Forged Educational Credentials, Diplomas, Certificates from Foreign Colleges and Universities and Financial Documents.

279.     Once these Residents at Domestic Violence Shelters at Hamdard, ICNA and Apna Ghar and other Foreigners residing outside United States obtain the USCIS Forms I-20, they apply for a F1 Visa at various United States Missions across the globe and if the Foreigner is already present in United States, he or she will file a Petition for F1 Visa with USCIS Service Center having jurisdiction on the Foreigner's State of Residence in United States, using the Forged Educational Credentials, Diplomas, Certificates from Foreign Colleges and Universities and Financial Documents.

280.     As per information and belief the Hamdard, ICNA and Apna Ghar Defendants has sold the Forged Educational Credentials, Diplomas, Certificates from Foreign Colleges and Universities and Financial Documents within United States and outside United States to thousands of Foreigners.

281.     The money for the Forged Educational Credentials, Diplomas, Certificates from Foreign Colleges and Universities and Financial Documents was paid by the beneficiaries of the Fraudulently obtained USCIS Forms I-20 and F1 Visas to the agents of Hamdard, ICNA and Apna Ghar in the form of cash in United States, India, Pakistan, Bangladesh, Bosnia-Herzegovina, Lebanon, Morocco and many other countries in Middle-East and South-East Asia.

282.  Defendant Maryam Mirza, Director of the Domestic Violence Program herself committed F1 Visa Fraud in the year 2002 as described earlier in this Complaint under Factual Background.

### Scheme # 4
### Scheme and Modus Operandi for Filing False Asylum Petitions (USCIS Forms I-589 and obtaining Asylum on False Claims
### (Hamdard, ICNA, Apna Ghar, Prairie State and Siddique Defendants)

283.  Hamdard, ICNA and Apna Ghar Defendants coached thousands of Foreigners to make False Claims of persecution in their home country in order to file Asylum Petitions by filing USCIS Forms I-589 with USCIS in United States.

284.  These Foreigners making False Claims of persecution in their home country were helped by the Prairie State and Siddique Defendants in filing of their Asylum Petitions with USCIS in exchange for payment of a Fee.

285.  The money for filing of these False Asylum Petitions was paid by the beneficiaries of these False Asylum Petitions to the agents of Hamdard, ICNA and Apna Ghar in the form of cash in United States, India, Pakistan, Bangladesh, Bosnia-Herzegovina, Lebanon, Morocco and many other countries in Middle-East and South-East Asia.

### Scheme # 5
### Scheme and Modus Operandi for Filing False 'K1' Visa Petitions Fiancé/Fiancée Visas) and obtaining 'K1' Visas
### (Hamdard, ICNA, Apna Ghar Defendants)

286.  Hamdard, ICNA and Apna Ghar Defendants worked in concert with Doe Defendants in arranging United States Citizens to enter into sham engagements with Non-Citizens from outside the United States in order to obtain Green Cards.

287.  As part of the scheme, United States Citizens travelled overseas for a short stay and gest engaged to Non-Citizens seeking to enter United States on K1 Visa.

288.  The expenses for the overseas travel of the United States Citizen were paid by the Hamdard, ICNA, Apna Ghar Defendants.

289.  After the engagement with Non-Citizens seeking to enter United States on K1 Visa, the United States Citizens would return to United States and file USCIS Form I129F with USCIS in order to bring the Fiancé/Fiancée to United States.

290.     Upon approval of the USCIS Form I-129F, the beneficiaries of the USCIS Form I-129F would apply for a K1 Visa at various United States Missions across the globe and upon granting of the K1 Visa, they would enter United States.

291.     One of the condition of the K1 Visa is that the beneficiary of such Visa must get married to the United States Citizen who filed the I-129F Petition within 90 days of their entry into United States.

292.     After entering into United States on K1 Visa, the beneficiaries of such Visas would not comply with the condition of getting married to the United States Citizen who had filed the USCIS I-129F Petition.

293.     Once entering United States, the K1 Visa holders would just disappear in the society with no trace of their whereabouts.

294.     The money for filing of the Fraudulent I-129F Petition was paid by the beneficiaries of the K1 Visas to agents of Hamdard, ICNA and Apna Ghar in the form of cash in United States, India, Pakistan, Bangladesh, Bosnia-Herzegovina, Lebanon, Morocco and many other countries in Middle-East and South-East Asia.

295.     The United States Citizen who filed the Fraudulent I-129F Petition would get paid part of his/her share from the money paid by the beneficiary of the Fraudulent K1 Visa and the rest of the money was shared by Hamdard, ICNA and Apna Ghar Defendants.


**Scheme # 6**
**Scheme and Modus Operandi for Marriage Fraud and For Filing False USCIS Forms I-130, USCIS Forms I-485 and USCIS Form I-751**
**(Hamdard, ICNA, Apna Ghar Defendants)**

296.     Hamdard, ICNA and Apna Ghar Defendants worked in concert with Doe Defendants in arranging United States Citizens to enter into sham marriages with Non-Citizens within United States in order to obtain Green Cards.

297.     As part of the scheme, United States Citizens would enter sham marriages with Non-Citizens in exchange of payment in an unknown amount.

298.     Once the United States Citizen enters into a sham marriage with a Non-Citizen, the United States Citizen would file USCIS Form I-130(Petition for Alien Relative) with USCIS for the Non-Citizen Spouse.

299.     Once the USCIS Form I-130 is approved, the Non-Citizen would file USCIS Form I-485(Application to Register Permanent Residence or Adjust Status) with the USCIS based on the approved USCIS Form I-130.

300.     Two Years after the approval of the Non-Citizen's USCIS Form I-485, the Non-Citizen would file for the USCIS Form I-751 to remove the conditions on Residence.

301. Once the Non-Citizens USCIS Form I-751 is approved, the Non-Citizen will file for divorce with the United States Citizen Spouse.

302. The money for facilitating the sham marriage with United States Citizens and subsequent filing of Fraudulent USCIS Forms I-130, Fraudulent USCIS Forms I-485 and Fraudulent USCIS Forms I-751 was paid by the beneficiaries of the Fraudulent USCIS Forms I-130 to agents of Hamdard, ICNA and Apna Ghar in the form of cash in United States, India, Pakistan, Bangladesh, Bosnia-Herzegovina, Lebanon, Morocco and many other countries in Middle-East and South-East Asia.

303. The United States Citizen who entered sham marriage with the Non-Citizen would get paid part of his/her share from the money paid by the beneficiary of the Fraudulent USCIS Form I-130 and the rest of the money was shared by Hamdard, ICNA and Apna Ghar Defendants.

## Scheme # 7

## Scheme and Modus Operandi for Diversity Visa Lottery Fraud (Green Card Fraud) (Hamdard , ICNA, Pakistan, Bangladesh and Doe Defendants (Unknown Immigration Attorneys))

304. As per Information and belief Hamdard, ICNA, Pakistan, Bangladesh and Doe Defendants (Unknown Immigration Attorney) are involved in Diversity Visa Lottery Fraud (Green Card Lottery Fraud).

305. Between 1995 and 2012, Hamdard and ICNA Defendants and unknown Immigration Attorneys in concert with the Consular Officials at the Consulate of Bangladesh in New York, obtained or helped in obtaining Passports for Indian and Pakistani Citizens and many other Citizens of countries in Middle-East and South-East Asia such False Passports where the Place of Birth of those Passport Holders was Bangladesh or a country which was eligible under Diversity Visa Lottery Program.

306. Indian Citizens cannot hold the Citizenship of Pakistan and Bangladesh.

307. Pakistani Citizens cannot hold Citizenship of Indian and Bangladesh.

308. Bangladeshi Citizens cannot hold Indian and Pakistani Citizenship.

309. Between 1995 and 2002, Hamdard and ICNA Defendants and unknown Immigration Attorneys in concert with the Consular Officials at the Embassy of Pakistan in Washington DC, obtained or helped in obtaining Passports for Citizens of countries in Middle-East and South-East Asia such False Passports where the Place of Birth of those Passport Holders was Pakistan or a country which was eligible under Diversity Visa Lottery Program.

310. Diversity Visa Lottery Petitioners who were born in Bangladesh were eligible to apply for Diversity Visa Lottery until 2012.

311. Diversity Visa Lottery Petitioners who were born in Pakistan were eligible to apply for Diversity Visa Lottery until 2002.

312. But Bangladesh and Pakistan are no more eligible country under Diversity Visa Lottery.

313. As per information and belief between 1995 and 2012 each Petitioner who was a Citizen of India or Pakistan and who was neither born in Bangladesh nor was a Citizen of Bangladesh, applied for Green Card under the Diversity Visa Lottery, with the help of Hamdard and ICNA Defendants, unknown Immigration Attorneys and the Consular Officials at the Consulate of Bangladesh in New York, by obtaining at times up to 20 False Bangladeshi Passports in up to 20 different identities, from the Embassy of Bangladesh in Washington DC and Consulate of Bangladesh in New York and other Missions of Bangladesh across the Globe in order to apply for the Green Card under the Diversity Visa Lottery Program.

314. As per information and belief between 1995 and 2002 each Petitioner who was neither a citizen of Pakistan nor was born in Pakistan, applied for Green Card under the Diversity Visa Lottery, with the help of Hamdard, ICNA Defendants, unknown Immigration Attorneys and the Consular Officials at the Embassy of Pakistan in United States, by obtaining at times up to 20 False Pakistani Passports in up to 20 different identities, from the Embassy of Pakistan in Washington DC and other Missions of Pakistan across the Globe in order to apply for the Green Card under the Diversity Visa Lottery Program.

315. As per information and belief at times two members of a family such as husband and wife who were Citizens of India or Pakistan and who were neither born in Bangladesh nor they were a Citizen of Bangladesh, obtained up to 20 False Bangladeshi Passports each, in up to 20 different identities, from the Embassy of Bangladesh in Washington DC and Consulate of Bangladesh in New York and filed up to 20 Petitions each, under Diversity Visa Lottery Program in a single year.

316. After Pakistan became ineligible under the Diversity Visa Lottery Program in 2002, Government of Pakistan issued and it continuous to issue to the current date, False Passports to its citizens with Place of Birth of a country which was or is eligible under the Diversity Visa Lottery Program.

317. After Bangladesh became ineligible under the Diversity Visa Lottery Program in 2012, Government of Bangladesh issued and it continuous to issue to the current date, False Passports to its citizens with Place of Birth of a country which was or is eligible under the Diversity Visa Lottery Program.

318. Each Bangladeshi and Pakistani Citizen and each petitioner of other countries whose place of birth is Pakistan and Bangladesh and who obtained Green Card under the Diversity Visa Lottery between 1995 through to the present date, needs to be investigated.

319.　It is very easy to identify the people who obtained the Green Card with False Bangladeshi Passports. Bangladeshi Citizens who obtained Green Card under Diversity Visa Lottery Program and who cannot speak Bengali, are the ones who obtained Green Card under the Diversity Visa Lottery Program with False Bangladeshi Passports.

320.　Even though most of the people from India, Pakistan and Bangladesh look alike but they don't speak Bengali. Only people of one State in India which shares border with Bangladesh, speak Bengali and the rest of the 35 States of India neither speak nor understand Bengali.

321.　Not a single person from Pakistan and Sri Lanka can speak or understand Bengali.

322.　Bengali is a very distinct language which is only spoken in Bangladesh and in the Indian State of West Bengal.

323.　According to testimony from Stephen A. Edson before the House Judiciary Committee, "in Bangladesh, for example, one agent is reported to have enrolled an entire phone book into Diversity Visa Lottery Program, so that he could then either extort money from winning applicants who had never entered the Diversity Visa Lottery Program to begin with or sell their winning slots to others."

324.　Between 1995 to the present date thousands of Indian Citizens obtained False Bangladeshi Passports from the Embassy of Bangladesh in Washington DC and Consulate of Bangladesh in New York and other Missions of Bangladesh across the Globe in order to apply for Green Card under the Diversity Visa Lottery Program.

325.　People born in India were ineligible under Diversity Visa Lottery since this Program started in 1995.

326.　Between 2002 through the present date, thousands of Pakistani Citizens obtained False Bangladeshi Passports from the Embassy of Bangladesh in Washington DC and Consulate of Bangladesh in New York and other Missions of Bangladesh across the Globe in order to apply for Green Card under the Diversity Visa Lottery Program.

327.　People born in Pakistan became ineligible under Diversity Visa Lottery in 2002.

### Scheme # 8
### Unlicensed Practice as a 'Clinical Psychologist' and Issuing of False 'Psychological Evaluation Report for 'U' Visa, VAWA and USCIS Forms N-648 Petitioners. (Defendants Maryam Mirza and Mohammad Hamid)

328.　Between August 21, 2002 and the present date, Defendant Maryam Mirza practiced as a 'Clinical Psychologist' without a License to practice 'Clinical Psychology' from the premises of Hamdard Center in Addison and Chicago, IL.

329.　Between August 21, 2002 and the present date, Maryam Mirza has treated and rendered treatment and 'Clinical Psychological Therapy' without a License to practice 'Clinical Psychology', to numerous

adults and children including Relator Mohammed's children from the premises of the Hamdard Center in Addison and Chicago, IL.

330. Between August 21,2002 and the present date, Defendants Maryam Mirza and Mohammad Hamid, has issued numerous False Psychological Reports to 'U' Visa, VAWA and USCIS Forms N-648 Petitioners.

331. Between August 21,2002 and the present date, Defendant Maryam Mirza and Mohammad Hamid attested their signature on numerous USCIS Forms N-648 which contained False Information and Defendants Maryam Mirza and Mohammad Hamid knew that the Information on the USCIS Forms N-648 is False.

## Scheme#9
## Fraudulently obtained Non-Immigrant Visa (H4), Green Card or Citizenship of United States
## (Defendant Maryam Mirza)

332. Defendant Maryam Mirza fraudulently obtained a H4 Visa from Embassy of United States in Islamabad, Pakistan on December 26, 2001 based on a False Pakistani Passport.

333. Defendant Maryam Mirza filed a fraudulent Petition for Order of Protection against her husband on August 22, 2002 in order to stay in United States based on False Allegations of Domestic Abuse.

334. Between August 22, 2002 and December 20, 2012, Defendant Maryam Mirza enrolled in College of DuPage and obtained an USCIS Form I-20 from College of DuPage by using Forged Report Intimation Card from the University of the Punjab, Forged Semester Grade Card from the Pak-American Institute of Management Sciences and Forged Financial Documents.

335. On December 20, 2012, Defendant Maryam Mirza filed an USCIS Form I-539 with USCIS to change her status from H4 to F1 by using the fraudulently obtained USCIS Form I-20, Forged Report Intimation Card from the University of the Punjab, Forged Semester Grade Card from the Pak-American Institute of Management Sciences and Forged Financial Documents.

336. Between December 26, 2001 through to the present date, Defendant Maryam Mirza has submitted fraudulent and counterfeit documentations to United States Government Officials to obtain or attempted to obtain immigration benefits, including a visa or entry into United States.

337. Between December 26, 2001 through to the present date, Defendant Maryam Mirza lied about, concealed information on an application or petition to obtain a visa, other documentation required for entry into the United States, admission to the United States and other kind of immigration benefits.

338. Between December 26, 2001 through to the present date, Defendant Maryam Mirza knowingly

encouraged, induced, abetted and aided foreign nationals to enter or try to enter the United States illegally (Alien Smuggling).

339. Between December 26, 2001 through to the present date, Defendant Maryam Mirza entered a False Date of Birth on various USCIS Forms.

340. Between December 26, 2001 through to the present date, Defendant Maryam Mirza misrepresented on USCIS Form I-485, USCIS Form N-400 and various other USCIS Forms that she never submitted fraudulent and counterfeit documentations to United States Government Officials to obtain or attempted to obtain immigration benefits, including a visa or entry into United States.

341. Between December 26, 2001 through to the present date, Defendant Maryam Mirza misrepresented on USCIS Form I-485, on USCIS Form N-400 and various other USCIS Forms that she never lied about, concealed information on an application or petition to obtain a visa, other documentation required for entry into the United States, admission to the United States and other kind of immigration benefits.

342. Defendant Maryam Mirza continues to commit various other immigration benefits frauds mentioned in this complaint as we speak.

343. For the conduct set forth in Paragraphs 332-342, Maryam Mirza be prosecuted criminally to the fullest extent of law and if Defendant Maryam Mirza is a Green Card Holder, her Green Card be revoked and she be deported back to Islamic Republic of Pakistan.

344. For the conduct set forth in Paragraphs 332-342, Maryam Mirza be prosecuted criminally to the fullest extent of law and if Defendant Maryam Mirza is a Citizen of United States, her Citizenship of United States be revoked and she be deported back to Islamic Republic of Pakistan.

## Claims for Relief

### *First Cause of Action*

345. Relator Mohammed realleges and incorporates by reference paragraphs 1-344 of this complaint.

346. Relator Mohammed further states all the Defendants knowingly presented, or caused to be presented, to employees of the United States, false and fraudulent claims for property or approval, a violation of 31 U.S.C. '3729(a)(1)(A).

## Prayer for Relief

347. Based on the foregoing, Relator Mohammed seeks the following relief:

A.    For violations of 31 U.S.C. '3729(a)(1)(A)

a)    Civil penalties of not less than $5,500 and not more than $11,000 for each false claim that the Court

determines the Defendants submitted to the United States;

b) Three times the amount of damages that the Government sustained because of Defendant's conduct;

c) A Criminal Investigation by FBI and Homeland Security Investigations.

d) Removal of Defendant Maryam Mirza from United States.

e) Removal from United States of every individual who obtained Fraudulent Non-Immigrant Visas, Fraudulent Immigrant Visas, any other kind of Fraudulent Immigration Benefits and Fraudulent United States Citizenship.

f) If United States intervenes in this qui tam action, the relator requests an award of 25 percent of the amount recovered by United States through this qui tam action. If United States declines to intervene in this action, the relator requests an award of 30 percent of the amount recovered by United States through this qui tam action.

g) An Award of 25 percent of the amount recovered by United States if the government chooses to obtain a recovery from the defendants in certain types of proceedings other than the Relator's FCA suit which is also known as Alternate Remedy.

h) Costs and expenses of litigation; and

i) Any other relief as the Court deems proper.

## CERTIFICATION

I, Abdul Mohammed, certify that to the best of my knowledge, the claims raised herein are not the subject of any other action pending in any court or any arbitration proceeding, and no such other action or arbitration is contemplated.

I certify that the foregoing statements made by me are true and accurate to the best of my knowledge. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment for perjury.

Dated this 31st of July 2017.

_____

Abdul Mohammed, Relator

43